HENRY C. NEVITT, as Receiver of THE GEORGE C. TREADWELL COMPANY, Appellant, *v.* THE FIRST NATIONAL BANK of Albany, Respondent.

*Corporation — action by a receiver to set aside a judgment against it — the judgment conclusive where there is no fraud in its procurement — otherwise as to a pledge of property of the corporation for a firm debt — scienter of pledgee — fraud.*

In an action brought by the temporary receiver of the George C. Treadwell Company, a foreign corporation, to set aside a judgment recovered against said corporation by the defendant, it appeared that George H. Treadwell was the president of the corporation, and was also a member of a firm known as Treadwell & Co.; that this firm was in 1892 indebted to the defendant upon certain

notes secured by collateral; that, as these notes were unpaid in 1893, the defendant insisted that George H. Treadwell should give for the debt notes of the corporation, also indorsed by himself, and as further security merchandise of the corporation.

This arrangement was carried out; the company's notes (signed "George C. Treadwell Co. by George H. Treadwell, President," although the by-laws of the company required also the treasurer's signature) were given, by which its merchandise in a safe deposit company was expressly pledged. Upon the receipt of the company's notes the defendant gave to Treadwell a draft to his order, drawn upon another bank, which Treadwell caused to be thereupon certified, and then returned to the defendant in payment of the firm notes. The defendant retained this check, but refused to surrender the notes to Treadwell until the corporation ratified his acts in making the notes and in pledging its merchandise, which ratification he never procured from the corporation, whose by-laws, a copy of which was in the possession of the defendant, provided that the treasurer should, together with the president or secretary, accept and indorse drafts and sign and indorse promissory notes for the purpose of the purchase of merchandise for the company.

Upon his failure to procure the ratification of the notes, the defendant brought an action upon them and recovered the judgment against the corporation which the receiver sought in this action to set aside.

*Held,* that as the corporation had defended the action upon the notes in good faith, the judgment, in so far as it granted a recovery upon the notes, could not be said to have been fraudulent or collusive; and that, in the absence of fraud in its procurement, the judgment could not be set aside. (Per MAYHAM, P. J.)

That, as to the collateral for the notes and the merchandise pledged, a different question was presented; that the act of George H. Treadwell in pledging the property of the corporation for the debt of Treadwell & Co., without any authority from the corporation to do so, and the act of the defendant in receiving the property with knowledge of the absence of such authority in George H. Treadwell, were fraudulent as to the creditors of the corporation. (Per MAYHAM, P. J.)

That as it appeared that George H. Treadwell was also a director of the defendant, he was acting in a double capacity in the payment of the debt of Treadwell & Co. with the property of the corporation, and that this constituted a further badge of fraud. (Per MAYHAM, P. J.)

That under the provisions of section 2 of chapter 314 of the Laws of 1858, the temporary receiver of the corporation was expressly given the right to disaffirm a transaction, like the one in suit, as being in fraud of the rights of the creditors of the corporation. (Per MAYHAM, P. J.)

APPEAL by the plaintiff, Henry C. Nevitt, as receiver of The George C. Treadwell Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Albany on the 14th day of May, 1895, upon the dis-

missal of the complaint directed by the court after a trial at the Albany Circuit before the court without a jury.

*Edwin Countryman,* for the appellant.

*J. Newton Fiero,* for the respondent.

MAYHAM, P. J.:

This action was brought by the appellant as temporary receiver of the George C. Treadwell Company, a corporation organized under the laws of the State of New Jersey, to set aside a judgment rendered upon the report of a referee in an action wherein the respondent was plaintiff and the George C. Treadwell Company defendant, for the amount of four several promissory notes, purporting to have been made by the George C. Treadwell Company, and discounted by said bank, on the ground that such judgment was obtained collusively by fraudulent connivance between said bank and one George H. Treadwell, assuming to act on behalf of the George C. Treadwell Company as its president.

The record discloses that George H. Treadwell was a member of the firm composed of himself and Henry Treadwell, known as Treadwell & Co.; that such firm became indebted to the First National Bank of Albany in the sum of $20,000, evidenced by four promissory notes of $5,000 each, signed by said Treadwell & Co. and indorsed by George H. Treadwell, and that after the making of said notes George H. Treadwell deposited with the bank, as collateral to the same, $20,000 preferred stock and $20,000 common stock of the George C. Treadwell Company; also other collateral, consisting of merchandise and stocks of various corporations, aggregating $17,000; that George H. Treadwell was, at the time of the making and indorsing of these notes, and the depositing of the collateral, a stockholder and director in the First National Bank; that the notes held by the bank were made and dated in the fall of 1892, and, remaining unpaid, the bank, by its officers, in May, 1893, requested payment of the notes held by it against Treadwell & Co.; that several letters urging payment were written by the bank to the members of the firm of Treadwell & Co., and in August, 1893, at a meeting of the directors of the bank, at which George H. Treadwell was present as one of their number, negotiations were opened for the

substitution of the notes of the George C. Treadwell Company for the notes held by the bank against Treadwell & Co.; that a a committee of the directors of the bank were authorized by it to carry on and perfect negotiations for payment of Treadwell & Co.'s notes; in the progress of the negotiation it was first agreed that the bank would take individual notes of George H. Tread-well in substitution for and in payment of Treadwell & Co.'s notes, but before such agreement was consummated the committee declined to carry out that arrangement, and insisted upon George H. Treadwell giving to said bank the notes of the George C. Treadwell Company, and indorsed by himself, and, as additional security, giving and pledging to the bank collateral, consisting of personal property; that after some hesitation George H. Treadwell accepted such proposition, and, in carrying out the same, executed notes of the George C. Treadwell Company to the amount of $20,000, signing the same, as president of that company, and took from the stock and merchandise of the George C. Treadwell Company goods inventoried at the price of $26,000, depositing them in the Albany Safe Deposit Company, of which he was, at the time, presi-dent, and taking a receipt of the deposit company in his own name, which he transferred to the bank as collateral to the payment of the George C. Treadwell Company's notes; that thereupon the cashier of the bank, acting for the bank, requested him to apply for a loan in the name of the George C. Treadwell Company of $20,000 from said bank upon the notes of the said George C. Treadwell Company, and that such application should be made on paper with the letter head of the George C. Treadwell Company; that, pursuant to that request, George H. Treadwell procured a letter sheet with the letter head of the George C. Treadwell Company, and wrote an applica-tion for a loan, as requested by the bank officer, and delivered it, together with the receipt of the deposit company, assigned to the bank as collateral to the $20,000 notes. This $20,000 was repre-sented by four separate notes of $5,000 each, in the ordinary form of a promissory note, and, in addition, each note pledged the stock of goods which had been deposited in the Albany Safe Deposit Company, to which we have before referred.

The case shows that this transaction was without the authority or consent of the George C. Treadwell Company; that by the by-laws

of that company, a copy of which was in the possession of the First National Bank, it was provided that the treasurer "shall, together with the president or the secretary, accept and indorse drafts and sign and indorse promissory notes for the purpose of the purchase of merchandise for the company's use."

Upon the deposit of these notes the cashier gave George H. Treadwell figures showing the amount due upon the notes of Treadwell & Co., which, at that time, was $20,163.66, and a draft was thereupon drawn on the National Commercial Bank of Albany, in which the George C. Treadwell Company kept its account, payable to the order of George H. Treadwell, and by him presented to the National Commercial Bank, where it was certified, and by him returned to the First National Bank in payment of the amount of Treadwell & Co.'s notes; that George H. Treadwell thereupon requested the delivery to him of the notes so paid, which was refused by the First National Bank, upon the ground, in substance, that he had no authority for signing the notes and executing the collateral, from the George C. Treadwell Company, and he was required by the bank to have those acts of his ratified by the George C. Treadwell Company before the notes of Treadwell & Co. could be surrendered.

The case shows that George H. Treadwell, subsequent to this transaction, endeavored to procure the ratification of the George C. Treadwell Company of his acts, and the signature of the treasurer of that company to the notes which he had given, but the company refused to ratify such acts and the treasurer refused to sign the notes, and for his violation of the by-laws in attempting to execute the notes he was subsequently removed from the office of president of the George C. Treadwell Company by the directors of that company.

Failing to procure such ratification and signature, an action was brought by the respondent against the George C. Treadwell Company on the four notes executed by George H. Treadwell to the bank, as president of the George C. Treadwell Company.

The summons in that action was served on George Curtis Treadwell, a son of George H. Treadwell, who acted as secretary of the George C. Treadwell Company, but does not appear to have been served on George H. Treadwell as the president of the company. George Curtis Treadwell, as such secretary, employed counsel to defend

that action, and the defense was interposed of a general denial, and the issue was immediately referred by stipulation to a referee to hear and determine, and a speedy trial was had, upon which trial the referee reported in favor of the bank for the amount of the notes and interest, and on that report judgment was entered.

This action is brought, in part, to set aside that judgment.

The learned trial judge in this case, as we think, correctly held that there was not sufficient evidence of a fraudulent conspiracy between the bank and the persons representing the George C. Tread-well Company, in the action tried before the referee, to authorize the setting aside of that judgment in this collateral action.

While it is quite clear that, by chapter 314 of the Laws of 1858, a receiver, acting for creditors of an insolvent corporation, may maintain an action to set aside a judgment fraudulently obtained in fraud of the rights of creditors of such insolvent corporation, yet it may well be doubted whether there was such sufficient proof of such fraudulent conspiracy in prosecuting and maintaining the action as would justify the setting aside of the judgment obtained by the bank against the George C. Treadwell Company on the ground of fraudulent conspiracy in the prosecution of that action.

Section 2 of the act above referred to provides as follows : " That every person who shall, in fraud of the rights of creditors and others, have received, taken or in any way interfered with the estate, property or effects of any * * * insolvent corporation * * * shall be liable, in the proper action, to the executors, administrators, receivers or other trustees of such estate or property for the same, or the value of any property or effects so received or taken, and for all damages caused by such acts to any such trust estate."

This section is doubtless broad enough to authorize an action by a receiver to set aside a judgment obtained against the corporation which he represents, by the fraudulent collusion between an officer of the corporation and a person or corporation prosecuting such action, provided the conspiracy to prosecute and maintain the action is clearly proved.

But in the case at bar the proof, as appears from the evidence of the attorney who defended the action tried before the referee, as well as the other proof in that action, fails to show any conspiracy, but, so far as appears from the records and the proof, the action was

defended in good faith by the attorney, and to the best of his ability, with the testimony, at that time, available and attainable by him.

Had the evidence on that trial disclosed the facts as fully as they appear on this, it is quite difficult to see how the plaintiff in that action could have recovered; but this court cannot, in this collateral action, review the proceedings in that case upon the merits. The judgment in that case, as was said by the learned trial judge in this case, imports absolute verity, and cannot be set aside in this action, except for fraud, or fraudulent conspiracy in obtaining it. Nor can this court on this appeal review the correctness of the judgment on the trial before the referee as to the merits of the action tried before him. That could only be done by a direct proceeding on an appeal from that judgment.

The fraud for which the judgment will be set aside must be in the procurement of the judgment. Judgments are impeachable only for those frauds which are extrinsic to the merits. (Freeman on Judg. § 489.)

To vacate a judgment there must be fraud in obtaining it. A judgment will not be vacated as a means for the court to review or revise its own final judgment, or to correct any error of law into which it may have fallen. (Black on Judg. § 329.)

Error or mistake in a judgment is not ground for setting it aside by action. (Story's Eq. § 1572; *Dobson* v. *Pearce*, 12 N. Y. 165.)

The doctrine governing the powers of the court of equity, in relieving against fraud, is well stated by EARL, J., in *Ward* v. *The Town of Southfield* (102 N. Y. 292), where the learned judge says: "Courts of equity have general jurisdiction to grant relief against fraud, and to set aside all deeds, contracts and other instruments obtained by fraudulent practices; and the jurisdiction of the court to grant such relief extends, not only to voluntary contracts *inter partes*, but also to judgments and decrees of courts. But the solemn judgment of a court should not be lightly interfered with. It is for the interest of the public, as well as of individuals, that there should be an end of litigation, and where parties have been lawfully brought into a court, having jurisdiction of their persons and the subject of litigation, and have

had opportunity to prosecute their claims and to defend their rights, and judgment has been regularly pronounced, while such judgment is not vacated or reversed, it concludes the parties thereto ; and a matter thus once litigated and adjudicated cannot again be brought into question. Such are the general rules which should not easily be evaded."

Tested by these rules, we think the trial judge in the case at bar was right in refusing to set aside and vacate the judgment sought to be set aside in this action.

But this action is not prosecuted for the sole and only purpose of setting aside this judgment.

The complaint also alleges that at the time of the making and delivering of the notes on which that judgment was obtained, certain goods and other securities and property of the George C. Treadwell Company were fraudulently transferred by George H. Treadwell to the defendant, and fraudulently received and retained by it, and also prays for an injunction restraining the defendant from disposing of the same, and asks judgment that the defendant deliver them to the plaintiff, or account for and pay over to the plaintiff the proceeds and value of the same.

At the conclusion of the evidence offered in this case, the plaintiff's counsel asked the court to hold and decide that this transfer of property was not affected by the judgment, but was independent of the same, and was fraudulent and void as against the receiver who represented the creditors of the George C. Treadwell Company. The court refused so to hold and decide, on the ground that the judgment has absolute verity in the eyes of the law, and that the bank shows title in the judgment, and, until the judgment is set aside, the title of the bank is superior to that of the receiver.

In this ruling we think the learned trial court erred. It will be borne in mind that the action prosecuted by the bank against the George C. Treadwell Company was an action at law on the notes to recover money had and received, and was in no sense a proceeding *in rem* against, or to recover title to, the property of the George C. Treadwell Company, alleged to have been fraudulently transferred by George H. Treadwell to the bank as collateral security for the payment of these notes. The judgment did not, therefore, affect the title of the plaintiff to the property so assigned, and the same was not

and is not claimed or held by the defendant under or by virtue of any lien created by such judgment. And the case discloses that the defendant never undertook to assert title to the property so assigned to it as collateral, under any power or authority conferred by that judgment. If, therefore, the original transaction between George H. Treadwell, as president of the George C. Treadwell Company, in transferring the property of the company to this bank in payment of his own individual debt, or the debt of Treadwell & Co., was fraudulent, as against the George C. Treadwell Company or its creditors, then the defendant got no valid title which it can assert as against the receiver of the George C. Treadwell Company, who represents not only the George C. Treadwell Company, but the creditors of that company.

It is insisted by the learned counsel for the defendant that the receiver, who took title to the property and effects of the George C. Treadwell Company by virtue of his receivership, took it subject to all the disabilities that existed against the George C. Treadwell Company, and that as that company had, through its president, transferred its property to the defendant, the plaintiff is estopped from assailing the transfer. This would undoubtedly be true if George H. Treadwell was in court seeking to set aside that transfer. He would be in *pari delicto* with the defendant, and would be estopped from alleging his own fraudulent act as a ground of relief. But the rule is quite otherwise where the receiver, who represents not only the George C. Treadwell Company, but the creditors of that company, is assailing the transfer. By the express provisions of section 2 of chapter 314 of the Laws of 1858 it is provided, as we have seen, " that every person who shall, in fraud of the rights of creditors and others, have received, taken or in any manner interfered with the estate, property or effects of any * * * insolvent corporation * * * shall be liable, in the proper action, to the executors, administrators, receivers or other trustees of such estate or property for the same, or the value of any property or effects so received or taken, and for all damages caused by such acts to any such trust estate." And the learned counsel for the defendant concedes that this act, chapter 314, above referred to, " authorizes a receiver of a corporation to disaffirm, treat as void, and resist all acts done, transfers and agreements made in fraud of

the right of any creditor interested in the property belonging to such corporation."

It will hardly be denied that, upon the evidence in this · case, the action of George H. Treadwell in giving the notes of the George C. Treadwell Company, without authority, to the bank, and the action of the bank in receiving them with the knowledge of such want of authority, as appears by the conduct of the bank in · refusing to deliver the old notes until such authority was given, and the new notes signed by the treasurer of the George C. Treadwell Company, and its being in possession of the by-laws of the George C. Treadwell Company, which expressly provide that the president of that company cannot alone make a valid note, cannot be upheld as against the creditors of the George C. Treadwell Company, especially as the proceeds of those notes never went upon the books or into the assets of the George C. Treadwell Company, and were solely used in payment of the note of Treadwell & Co., upon which the George C. Treadwell Company was in no way liable.

Such a transaction, if it could be upheld as against the creditors of · the George C. Treadwell Company, would permit the president of any corporation, with the knowledge and consent of his personal creditors, to appropriate the property of the corporation to the payment of the individual debts of the president, and, if upheld, would put the creditors of the corporation, of which he was the president, at defiance. The bare statement of such a proposition would seem to carry upon its face the evidence of its fraudulent and illegal character.

There is another badge of fraud, which appears in the transaction between George H. Treadwell, acting as president of the George C. Treadwell Company, and this bank; and that is, that at the time of this transfer of property to the bank as collateral, and at the time of making these notes and having them discounted for his own benefit to furnish means to pay his own indebtedness to the bank, of which he was a director, he was acting in a double capacity, as a director of the bank, negotiating with himself, as the president of the George C. Treadwell Company, to pay his debt to the bank, of which he was a stockholder and director, with the property of the George C. Treadwell Company.

It would seem to require no citation of authority, although

authorities are abundant, to prove that no such transaction could be upheld as against the creditors of the George C. Treadwell Company.

I am, therefore, clearly of the opinion, upon the evidence in this case, that the plaintiff was entitled to judgment declaring the transfer of this collateral void, as against the creditors of the George C. Treadwell Company, and that the plaintiff should have had judgment for the recovery of the possession of such merchandise and collateral, or for an accounting for their value and a recovery for the same.

The judgment must be reversed and a new trial granted, costs to abide the event.

PUTNAM, J., concurred in result; HERRICK, J., not acting.

Judgment reversed and a new trial granted, costs to abide the event.